UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE UNION CENTRAL LIFE
INSURANCE CO.,                                              Case No. 1:10-cv-147

      Plaintiff,                                              Dlott, J.
                                                                                    Bowman, M.J.

      v.

JOHN BALIAN,

      Defendant.

**REPORT AND RECOMMENDATION**

On March 3, 2010, Plaintiff initiated this litigation against its former insurance agent, John Balian, alleging breach of contract and unjust enrichment based upon Defendant's failure to repay certain "chargebacks." Plaintiff alleges that repayment is owed because Defendant was initially paid commissions on the sale of two insurance policies, which policies were subsequently terminated within a year. (Doc. 1). In lieu of filing an answer, Defendant moved to dismiss the complaint for lack of personal jurisdiction and improper venue. (Doc. 7). Defendant's motion, Plaintiff's response thereto and Defendant's reply (Docs. 9, 12), have been referred to the undersigned magistrate judge for initial consideration and a report and recommendation. (Doc. 14). Having completed that review, I now recommend that the Defendant's motion to dismiss (Doc. 7) be GRANTED.

**I. Background**

Plaintiff's complaint states that Plaintiff is a Nebraska corporation with "a principal place of business" in Ohio.  (Doc. 1 at 1, 5).  Plaintiff is a subsidiary of Ameritas Life Insurance Company, and an affiliate of Acacia Life Insurance Company ("Acacia").  (Doc. 9-1 at 4).  Based upon its corporate affiliation with Acacia, Plaintiff Union Central states that it performs various functions related to Acacia's insurance business, "including underwriting, claim administration, policy issuance, agent licensing, and agent compensation."  (*Id.* at 5).

Plaintiff alleges that it employed Defendant as a licensed insurance agent from September 1, 2007 to July 2009, when it terminated the agency relationship.  (*Id.* at 6, 13; *see also* Doc. 9-5).  Defendant's broker contract was with the "UNIFI Companies," defined in the parties' contract as a holding company (domiciled and headquartered in Nebraska) that contains a group of insurance companies including:  Union Central, Ameritas, First Ameritas Life Insurance Corp. of New York ("FALIC"), and Acacia.  (See Docs. 9-2 and 9-3).  The individual members of the UNIFI Companies are headquartered in various states; relevant to this case is the fact that Acacia is headquartered in Bethesda, Maryland.  (Doc. 9-4).  Plaintiff Union Central is licensed to sell insurance products in all 50 states.  (Doc. 1 at 5).

Defendant is a California citizen and resident.  (Doc. 1 at 2).  Defendant is licensed to sell insurance products only in California, not in Ohio or any other state.  (Doc. 1 at 6).  Defendant has never visited the State of Ohio.  (Doc. 7 at 7). Defendant was hired to become a UNIFI Companies agent in California by John Andraos, a

general manager of a UNIFI branch office located in Glendale, California.[1] Defendant never sold any polices of insurance on behalf of Plaintiff Union Central. However, on or about December 15, 2008, Defendant sold two life insurance policies, issued by Acacia Life Insurance Company, to two residents of California.

Despite the fact that the policies were issued by Acacia, Plaintiff alleges that Union Central paid more than $435,000 in commissions based upon the sale of the policies. Plaintiff further alleges that a portion of those commissions paid were required to be repaid to Plaintiff by Defendant under the parties' brokerage contract because the subject policies were terminated within a year. Plaintiff claims that Defendant presently owes Plaintiff in excess of $91,000 in commissions that must be repaid.

The brokerage contract contains a mandatory arbitration provision which requires that arbitration take place in Lincoln, Nebraska "unless the partes mutually agree to another location." (Doc. 9-3 at 7). Although the contract contains no other choice of venue provision for court proceedings, it does provide that its terms will be governed "by the laws of the state of Nebraska" whether in arbitration or litigation (*Id.* at 5, 7). The arbitration provision also provides that the costs of arbitration "shall be shared equally by the parties." (Id. at 7).

Plaintiff initiated arbitration proceedings on January 20, 2010. In response, the American Arbitration Association ("AAA") notified both parties on January 29, 2010 that the parties' arbitration clause contained a "material or substantial deviation" from AAA's

---

[1] Defendant explains that he was previously employed by Andraos as an insurance agent with the Guardian Life Insurance Company at the same location. When Andraos transformed his insurance business from a Guardian business to a UNIFI Companies business, Andraos "began to present and solicit UNIFI agent contracts to existing Guardian agents" who had previously worked for Andraos in the same office. (Doc. 12 at 6).

protocol, because the parties' agreement prevented punitive or exemplary damages and referred to Commercial Rules rather than to Employment Rules. (Doc. 9-17). The AAA requested that Plaintiff employer execute a written waiver of the apparent conflicts prior to February 5, 2010, in order to permit the matter to proceed. The waiver appears to have been executed by Defense counsel on the day it was requested, January 29, 2010. (*Id*. at 4). However, on March 2, 2010, the AAA dismissed the arbitration proceeding because it had not timely "received the required submission forms from the employee in this matter." (Doc. 9-18).

Although the AAA's letter does not specify the nature of the "required submission forms" that it failed to receive from Defendant, Plaintiff asserts that AAA dismissed the proceeding due to Defendant's failure to remit payment of his share of the arbitration costs. (Doc. 9 at 6). Defendant disputes that assertion, suggesting that arbitration proceedings were instead dismissed as a result of Plaintiff's own conduct. (Doc. 12).

The parties' disagreement concerning the reason for dismissal of arbitration proceedings need not be resolved. Even if Plaintiff is correct that proceedings were dismissed based upon Defendant's failure to comply with terms of the arbitration agreement, that fact would not imbue this Court with jurisdiction over the Defendant.

## II. Analysis

Defendant seeks dismissal pursuant to Rule 12(b)(2), on the basis that this Court lacks personal jurisdiction over him. I agree.

The Plaintiff bears the burden of establishing the existence of jurisdiction. *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006). On a motion to dismiss without a hearing, Plaintiff's burden is "relatively slight," but Plaintiff must still make a *prima*

*facie* showing that personal jurisdiction exists. *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988); *see also Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). In this case, Plaintiff has failed to satisfy even this "slight" burden of showing the existence of general or specific jurisdiction; therefore, Defendant's motion must be granted.

### A. Lack of General Jurisdiction

Jurisdiction in this case is based solely upon diversity of citizenship. Defendant argues that he cannot be subjected to the general jurisdiction of this Court because he does not live or reside in Ohio, has never even visited Ohio, has no business or bank accounts in Ohio, and has never sold goods or services in Ohio. Plaintiff argues briefly that this Court can exercise general jurisdiction over Defendant based upon the Defendant's "continuous and systematic" contacts with Ohio over the nearly two-year period that Defendant acted as an insurance agent on Plaintiff's behalf. *See Third Nat'l Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). However, the alleged "continuous and systematic" contacts are insufficient to establish general jurisdiction insofar as they consist solely of 1) the transmittal of information and/or documents from Ohio concerning the offer of employment with Plaintiff's holding company, the UNIFI Companies; and 2) information and/or documents relating to Defendant's sale of just two life insurance policies underwritten by a Maryland corporate affiliate of Plaintiff, Acacia, on a single date in December 2008.

With respect to the first category of contacts, relating to the broker's contract, there is no dispute that the offer of employment was made in California, by a California branch manager (Andraos) with whom Defendant had a long-standing prior relationship

in California.  The brokerage contract signed by the California Defendant was for the purpose of selling UNIFI Companies' products (which included Plaintiff and Acacia as well as other affiliated insurance companies) through a UNIFI branch office in California. UNIFI Companies is a Nebraska holding company, while the various insurance companies held under that corporate umbrella are incorporated in and have offices in both Nebraska and other states, including but not limited to Ohio.  Even if Andraos mailed to Ohio some documentation signed by Defendant in California, the Defendant himself never transmitted a single employment document to Ohio, never traveled to Ohio, and in fact claims to have been wholly unaware of any connection between his employment in California and Ohio.  (Doc. 12 at 7).  The brokerage agreement upon which Plaintiff relies as establishing an Ohio connection itself gives no indication that any resulting dispute would be litigated in Ohio.  In fact, the sole reference to a choice of law provision specifies that Nebraska law should apply, not entirely surprising given that the contract is between Defendant and a Nebraska holding company.

With respect to the second item - the sale of the two life insurance policies - there is no dispute that the policies were issued by Acacia, a Maryland corporation, despite the fact that some paperwork appears to have been processed on behalf of Acacia by Union Central, a separately incorporated affiliate.  During his tenure as a UNIFI Companies agent, Defendant never sold a single policy on behalf of Union Central. The brokerage contract entered into by Defendant with UNIFI Companies clearly states that when selling an Acacia product, Defendant acts only as an agent of Acacia, and "not Union Central" or other affiliated companies.  (Doc. 9-3 at 1).  Correspondence from

Acacia to the insureds relating to the subject policies was mailed from Acacia's Nebraska office, not by Plaintiff from its Ohio office.  (Doc. 12 at 31-32, 36-38).

When Defendant sold the two Acacia policies, he turned in all relevant documents to his California branch office in Glendale, California.  Defendant represents that it is customary in the life insurance industry for agents to work exclusively, as he did in this case, with the local branch office, rather than having any contact with a particular company's "home" office.  (Doc. 12 at 7).  In fact, Plaintiff does not dispute Defendant's assertion that Defendant himself never had any direct contact with the Ohio office.  Rather, the only contacts that occurred in Ohio involved the processing and mailing of payment by Plaintiff to Defendant of commissions on the sale of the two Acacia policies in California, and the subsequent demand by Plaintiff for repayment of a portion of the commission earned.  Obviously, these were not contacts to Ohio made by *Defendant*.

In short, Plaintiff's assertion of general jurisdiction is utterly without merit.

### B.  Lack of Specific Jurisdiction

A determination of whether this Court can exercise specific jurisdiction over the Defendant involves a two-part analysis.  First, the Court must consider whether jurisdiction is established by Ohio's long-arm statute.  Second, the Court must determine whether the exercise of jurisdiction over the foreign defendant comports with "traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  A failure to demonstrate either component will result in a lack of jurisdiction.

### 1. Long Arm Statute

Plaintiff argues that personal jurisdiction is proper under Ohio's long-arm statute, Ohio Rev. Code §2307.382(A)(1), because the breach of contract arises from Defendant's "transacting...business in this state," and "a substantial part of the events ... giving rise to Plaintiff's claim occurred in this district." (Doc. 1 at 4; Doc. 9 at 8). However, Ohio's long arm statute is "not coterminous with federal constitutional limits." *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000). As explained above, this dispute generally arises out of an alleged breach of Defendant's brokerage contract, a contract that was executed in California with a Nebraska corporation, on behalf of that corporation and several affiliates. The precise dispute - Defendant's alleged failure to repay a portion of insurance commissions- arises more specifically from Defendant's sale in California of an Acacia life insurance product (a Maryland corporation) to two California residents on the same date. To put it bluntly, it is not remotely obvious that Defendant transacted business in Ohio or that "a substantial part of the events" occurred in Ohio. *See also Apex Energy Solutions of Cincinnati, LLC v. Apex Energy Solutions of Indiana, LLC,* Case No. 1:10-cv-106-SJD, 2010 WL 4642902 at *4-5 (S.D. Ohio Nov. 9, 2010)(dismissing defendant sales representative who attended only two meetings in Ohio and did not reach out to plaintiff in the forum state, was not bound by Ohio choice of law provision, and conducted sales only in Kentucky to Kentucky residents); *Shaker Constr. Group, LLC v. Schilling*, Case No. 1:08-cv-278-SJD, 2008 WL 4346777 at *3-4 (S.D. Ohio Sept. 18, 2008)(finding defendant did not transact business in Ohio, despite negotiating transactional documents in Ohio, because

"[m]erely directing communications to an Ohio resident for the purpose of negotiating an agreement...is insufficient" to satisfy long arm statute).

### 2. Due Process

Although the Court need not review the issue of jurisdiction further because Plaintiff has failed to demonstrate jurisdiction under Ohio's long arm statute, I conclude that Plaintiff also has failed to demonstrate that Defendant's contacts with the State of Ohio constitute "minimum contacts" that satisfy the requirements of due process. *See Calphalon Corp. v. Rowlette*, 228 F.3d at 721. To satisfy due process, Plaintiff must demonstrate that Defendant's contacts with Ohio were purposeful, meaningful in the context of the litigation, and substantial.

> First the defendant must purposefully avail himself of the privilege of acting in the forum state. Second the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*See Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968).

Regarding the first prong, Plaintiff argues that Defendant purposefully availed himself to Ohio "by seeking out and then working for Plaintiff, an Ohio resident." (Doc. 9 at 12). To determine whether a defendant has satisfied the "purposeful availment" requirement, a court will look to see if a defendant's contacts "proximately result from actions by the defendant himself" and result in a "'substantial connection' with the forum" such that he "should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Contacts that are merely "random, fortuitous, or attenuated" will not provide an adequate basis for jurisdiction. *Id.*

On the record presented, it is clear that Defendant did not "purposefully avail" himself" in Ohio. He did not seek to work specifically for an Ohio corporation, but rather, signed a broker's contract to sell insurance for a national insurance holding company in California, to California residents. The Defendant never had any personal or direct contact with Ohio. He did not attend training in Ohio and in fact has never visited Ohio. Defendant did not negotiate his contract with Ohio representatives, but rather, was hired by Plaintiff's California branch manager. The brokerage contract executed by Defendant (in California) was to be governed by Nebraska law, and - in the absence of the parties' agreement to an alternate location- was subject to binding arbitration in Nebraska. Ultimately, Plaintiff's claims arise from Defendant's sale in California of two life insurance policies, issued by a Maryland insurer, to two California residents. The fact that the policies were ultimately processed by representatives physically located in Ohio was fortuitous but not in any way intentional by Defendant. Though unpublished, on extraordinarily similar facts (despite much more frequent telephone and wire contacts and an Ohio choice of law provision), Judge Barrett granted a motion to dismiss filed by a defendant in *Ohio Nat'l Life Assurance Corp. v. Shippy*, 2007 WL 490169 (S.D. Ohio Feb. 9, 2007).

Plaintiff also fails to make a sufficient showing on the second prong - whether the cause of action arises from Ohio. The brokerage contract was executed by Defendant and by Plaintiff's branch manager in California. The dispute concerns commissions earned on insurance policies issued to California residents, who made payments (and ultimately failed to make payments) from California accounts. The underlying brokerage contract upon which Plaintiff bases its claims contains no obvious reference to Ohio.

The only relationship between the employment contract and Ohio was the fact that some modest correspondence including a brokerage number was mailed from Plaintiff's Ohio office to Plaintiff's branch office in California.  The unilateral actions by plaintiff cannot alone provide sufficient contacts to subject a nonresident defendant to jurisdiction with a forum state.  *See generally Hanson v. Denckla,* 377 U.S. 235, 253 (1958); *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984).

Last but not least, Plaintiff fails to show that this Court's exercise of jurisdiction would be "fundamentally fair."  Plaintiff argues that Defendant's "refusal" to comply with the parties' arbitration agreement "belies any argument that the Court's personal jurisdiction over Defendant is unfair." (Doc. 9 at 13).  As previously referenced, whether or not Defendant exhibited "hostility towards Arbitration," as Plaintiff contends, remains an issue in dispute.  (*Id.*).  However, this Court cannot agree that even if Defendant failed to pay the requisite arbitration fee, that fact alone is sufficient to subject Defendant to suit in Ohio.

Plaintiff additionally argues that Defendant "appears to be a man of means as he claims to maintain a tax law practice supplementing more than $435,000 in income that Defendant earned from Plaintiff in 2009."  Nevertheless, the fact that an individual foreign citizen may be able to afford to travel to a distant forum has never been grounds for assuming jurisdiction.  For that matter, as Defendant points out, there is ample evidence that Plaintiff can easily afford to send its representatives to California, a forum with much closer ties to the underlying dispute.

### C. Improper Venue

Defendant has alternatively moved to dismiss based upon improper venue, pursuant to Rule 12(b)(3). In light of the lack of personal jurisdiction over the Defendant, the Court declines to reach this alternative basis for dismissal.

### D. Rule 11

Defendant repeatedly accuses Plaintiff of violating Rule 11, Fed. R. Civ. P. (Doc. 7 at 10, Doc. 12 at 1-3). Although Defendant has filed no formal motion, he asks this Court to impose sanctions based upon the "false and intimidating statements" made by Plaintiff's counsel. (Doc. 12 at 1).

Prior to seeking relief from this Court under Rule 11, a party must comply with certain procedural requirements, including serving notice of the conduct that allegedly violates the rule on the responsible party at least 21 days prior to filing any Rule 11 motion. *See* Rule 11(c)(2). Because the record contains no evidence of Defendant's compliance with the procedural requirements of Rule 11, the Court declines to address Defendant's assertion that Plaintiff's counsel has violated that rule.

### III. Conclusion and Recommendation

For the reasons stated herein, **IT IS RECOMMENDED THAT** Defendant's motion to dismiss for lack of jurisdiction (Doc. 7) be **GRANTED** and that this case be dismissed and stricken from the active docket.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

THE UNION CENTRAL LIFE
INSURANCE CO.,                                            Case No. 1:10-cv-147

      Plaintiff,                                        Dlott, J.
                                                        Bowman, M.J.

  v.

JOHN BALIAN,

      Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).